[Civ. No. 4565. Fifth Dist. July 21, 1980.]

Estate of FREDDIE JO LINDSEY, Deceased.
FRED LINDSEY, as Administrator, etc., Petitioner and
Respondent, v.
FLORENCE LINDSEY SMITH, Objector and Appellant.

COUNSEL

Russell G. Vanrozeboom for Objector and Appellant.

Sandell, Young & St. Louis and Paul Hager for Petitioner and Respondent.

OPINION

ZENOVICH, J.—Florence Lindsey Smith appeals from a judgment by the superior court granting letters of administration in the estate of Freddie Jo Lindsey to respondent Fred Lindsey.

Respondent first petitioned for letters of administration in the estate of the decedent on April 25, 1978. Appellant filed objections to the petition on May 22, 1978. She also stated in the objections that she "will file a petition with this [the superior] court asserting her right to such letters on or before the hearing date set for these objections." On May 18, 1978, the superior court had set July 7, 1978, as the date for a hearing on respondent's contested petition. A hearing was conducted on the established date and the matter submitted upon the basis of evidence presented at the proceeding, a certain deposition, and supplemental points and authorities. Appellant executed and allegedly lodged a counterpetition for letters of administration on July 13, 1978, although the record does not reflect that any hearing was conducted on this petition. In a memorandum opinion issued on August 2, 1978, the court granted respondent's petition and overruled appellant's objections. Upon request of appellant, the court subsequently rendered findings of fact and conclusions of law, as well as entering a judgment in accordance with its earlier memorandum opinion. The present appeal then followed.

Since they are pertinent and succinct, the following findings and conclusions were made by the court from the material submitted at the July 7 hearing:

"FINDINGS OF FACT

"1. That at the time of Petitioner, FRED LINDSEY's Application for Letters of Administration there had been no probate of will or prior

Letters of Administration requested in the Estate of FREDDIE JO LINDSEY.

"2. That at the time of Application for Letters the Petitioner, FRED LINDSEY, was the father of the decedent, FREDDIE JO LINDSEY.

"3. At the time of the Application for Letters the decedent's spouse, Florence (Lindsey) Smith had remarried.

"4. That following the death of the deceased, an IT-22 and IT-3 form of the State Inheritance Tax Division had been completed and filed by Florence (Lindsey) Smith which did not reflect substantial separate property of the decedent.

"From the foregoing facts, the Court concludes:

"CONCLUSIONS OF LAW

"1. That at the time of the Application for Issuance of Letters of Administration, Florence (Lindsey) Smith was not the surviving spouse of the decedent. *In re: Allen's Estate*, 78 C 581 (1889) (21 P 426) and *In re: Pickett's Estate*, 1 Cof. 93 (1885).

"2. The status of the parties at the time the Letters are granted must control. *In re: Herriott's Estate*, 219 C 529 (1933) (28 P 2d 355) and *In re: Estate of Connick*, 189 C 498 (1922) (209 P 356).

"3. The rights of Petitioner, FRED LINDSEY, are superior to that of Florence (Lindsey) Smith pursuant to Probate Code Section 422 and Petitioner is hereby granted preference as to the Issuance of Letters as a parent of decedent.

"4. The court will issue to Petitioner, FRED LINDSEY, Letters of Administration and properly declared [*sic*] him to be the Administrator of the Estate of FREDDIE JO LINDSEY."

Appellant initially contends that she is entitled to preference for appointment as administratrix pursuant to Probate Code section 422, subdivision (a)(1),[1] since she is allegedly within the first preferen-

---

[1]Unless otherwise indicated, all code references hereafter are to the Probate Code.

Section 422, subdivision (a)(1), provides: "Administration of the estate of a person dying intestate must be granted to one or more of the following persons, who are entitled to letters in the following order: (1) The surviving spouse, or some competent person whom he or she may request to have appointed."

tial class of persons to whom letters may be granted. She further argues that the lower court erred in determining that her remarriage after decedent's death vitiated her statutory priority over respondent, who is in the fourth preferential category.[2]

■ As a threshold matter, it must be decided whether appellant can pursue this contention after having failed to comply with the procedures governing filing of counterpetitions. Upon examination of the record and pertinent law, we are of the opinion that appellant is foreclosed from asserting her priority argument, since the probate court lacked jurisdiction to hear and, further, did not even consider the counterpetition at the proceeding held on July 7, 1978.

The record shows the following sequence of events. On May 22, appellant filed objections, among which appeared the representation about filing a counterpetition prior to the hearing date set for respondent's petition. Previously, on May 18, the court had set the date of the hearing for July 7, 1978. The proceeding took place as scheduled, and appellant did not execute or lodge any counterpetition until July 13. Nothing indicates that there was a hearing on the counterpetition or that appellant requested a continuance in the July 7 proceeding for purposes of filing the document which she mentioned in her written objections. In its finding of fact, the court specifically noted: "That at the time of Petitioner, FRED LINDSEY's Application for Letters of Administration there had been no probate of will *or prior Letters of Administration requested in the Estate of* FREDDIE JO LINDSEY." (Italics added.)

It is clearly established that notice of a hearing involving a petition for letters of administration is jurisdictional. Since the hearing is an in rem proceeding, the statutory requirements concerning notice must be strictly observed, so as to prevent a denial of due process to those persons for whose benefit the notice is required. (See 24 Cal.Jur.3d, Decedents' Estates, § 202, pp. 344-345; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 276, p. 5772.) Under section 441, "The clerk shall set the petition for hearing by the court and cause notice thereof to be published pursuant to Section 333" and "shall also cause notice of the hearing to be mailed...to the heirs of the decedent named in the petition at least 10 days before the hearing..." from the date of the filing of the original petition. This provision imposes an obligation on a petitioner for letters of administration to file the petition so

---

[2]See section 422, subdivision (a)(4).

that notice of the hearing can be given to decedent's heirs. (24 Cal. Jur.3d, Decedents' Estates, § 204, p. 349.) Likewise, the same notice requirements are applicable to a contestant who files a counterpetition. Section 442 spells forth this requirement as follows: "... He [the individual asserting his own right to letters] *must file a petition and give the notice required for an original petition, and the court must hear the two petitions together.*" (Italics added.) This statutory provision requires a probate court to determine which of two petitioners is entitled to be appointed administrator if a critical condition precedent is satisfied—the contestant files a counterpetition for the issuance of letters to himself. (24 Cal.Jur.3d, Decedents' Estates, § 215, p. 359; accord *Estate of Duncan* (1969) 1 Cal.App.3d 212, 215 [81 Cal.Rptr. 568] ("When there are two petitions for the appointment of a personal representative *on file,* 'the court must hear the two petitions together.'") (Italics added and omitted in original.).) The jurisdictional nature of the notice occurring subsequent to filing is also evidenced by the language of section 443, which provides that "Before letters are granted, the fact of death and that the decedent died intestate, and that notice has been given as above required, must be proved by the evidence of the applicant or others...."

From the above discussion, it is clear that the purpose behind a timely filing of the counterpetition is to insure notice to decedent's heirs so that one contested hearing may be held. The record in the present case reflects that the counterpetition was not even executed until July 13, 1978, five days after the hearing on respondent's petition. In fact, even though appellant asserts that her counterpetition was lodged with the lower court on July 13, nothing in the record indicates the date of filing with the clerk.[3] Since decedent did have heirs (his parents),[4] appellant did not file the counterpetition so that notice could be given and the court could consider the two petitions together (see § 442). This omission ran counter to appellant's declaration in her written objection, where she stated intentions to file on or before the July 7 hearing date.[5]

[3]At oral argument, appellant's counsel stated that the clerk accepted the counterpetition but refused to file it.

[4]Appellant readily admits that decedent's parents (Lucille and Fred Lindsey) were heirs, since she mentions them in the jurisdictional facts required in her counterpetition. (§§ 442, 440, subd. (3).) Thus, they were entitled to notice under sections 441 and 442.

[5]Appellant's suggestion that the intention stated in the objections was equivalent to a counterpetition must be rejected. Acceptance of this argument would abrogate strict compliance with the notice provisions. In addition, appellant's own statement—"will file a [counter]petition"—reveals that a counterpetition is generically different from an intention stated in objections.

Moreover, there is no indication that appellant requested a continuance for purposes of hearing the counterpetition and petition in tandem, although probate courts frequently postpone proceedings on petitions for letters of administration in the interests of justice. (See 24 Cal.Jur.3d, Decedents' Estates, § 223, pp. 367-368.) Given the fact that the belated action of appellant did not allow the probate court to hear the counterpetition at a joint proceeding pursuant to section 442, we are of the opinion that she is foreclosed from pursuing reversal on the priority contention for jurisdictional reasons.

The record shows that the counterpetition was not even physically before the probate court at the July 7 hearing; thus, it was limited to passing upon respondent's petition and appellant's objections. The decision to issue letters of administration to respondent was proper in the absence of a cognizable counterpetition, since respondent was the parent of decedent and was entitled to succeed to some of decedent's intestate, separate property. (See § 422, subds. (a)(4) and (b)(1).)[6]

As respondent indicates and we agree, appellant still retains a remedy as the surviving spouse of decedent under section 452. Under that provision, "The surviving spouse, when letters of administration have been granted to a child, grandchild, parent, brother or sister of the intestate or to the public administrator; or any of such relatives, when letters have been granted to any other of such persons, may assert his prior right, and obtain letters of administration, and have the letters before granted revoked, in the manner prescribed in...section [451]." Although the court has discretion to refuse to grant letters to any person who had actual notice of the initial petition and an opportunity to contest it (see § 453), appellant can still pursue this remedy if she feels aggrieved. The record shows that appellant asserted from the outset her right as surviving spouse to letters of administration. She did this by objection to respondent's petition on May 22, 1978, and by asserting she would file a petition claiming her own right to letters before the hearing date. Thus, appellant did not sleep on her rights; rather, she simply failed to get her counterpetition on file by the July 7 hearing date. She did, however, attempt to file the counterpetition on July 13. Viewing the record in its totality, we believe the probate court should look with favor on the application to revoke respondent's letters under section 452.

[6]Since decedent left some separate property and had no issue, his parents were entitled to share this property with the surviving spouse under the intestacy laws. (See § 223.)

Because appellant may pursue revocation under section 452 and in order to insure that the probate court adopts the proper interpretation of her preferential status, it then becomes pertinent to determine whether the probate court correctly granted letters of administration pursuant to section 422. Upon a review of the case law, we are of the opinion that the court erred in concluding that appellant's remarriage vitiated her preferred status as administratrix under section 422, subdivision (a)(1).

Section 422, subdivision (a)(1), designates that "The surviving spouse" is the first preferential class entitled to letters of administration, whereas "The parents" are accorded fourth class priority under subdivision (a)(4). If appellant (following her remarriage after decedent's death) remains a "surviving spouse," then she is granted preference under the statutory framework of the Probate Code. In *Estate of Dow* (1901) 132 Cal. 309 [64 P. 402], this issue was dispositively answered in appellant's favor. Interpreting former Code of Civil Procedure section 1365 (the predecessor to § 422),[7] the *Dow* court concluded that the remarriage of the surviving spouse after the deceased spouse's death did not affect the survivor's statutory right to letters on the decedent's estate. (*Estate of Dow, supra,* 132 Cal. at p. 310; accord 24 Cal.Jur.3d, Decedents' Estates, § 159, p. 284.)[8] Since the surviving spouse's status within the meaning of the statute concerning entitlement to letters is ascertained as of the date of the deceased spouse's death (see *op. cit. supra,* at p. 283), the trial court incorrectly concluded as a matter of statutory interpretation that respondent father had priority over appellant following her remarriage.

The cases cited by the probate court in support of its conclusion are either distinguishable or inapposite. In *Estate of Herriott* (1933) 219 Cal. 529 [28 P.2d 355], the Supreme Court was dealing with a priority struggle between the public administrator and decedent's sister postdating the death of the mother and father of the decedent. Facing this

---

[7]The legislative history to section 422 indicates that it was not a deviation from the former statutory language contained in the Code of Civil Procedure. (See Deering's Ann. Prob. Code (1974 ed.) foll. § 422 under heading Prior Law, p. 195.)

[8]Specifically, the court stated: "It is argued that after her marriage she ceased to be the 'surviving wife' within the meaning of the section. True, she is not the wife of deceased. She could not be the wife of her husband after his death. She was his widow, but she was during life his wife, and as his wife she survived him. When the legislature used the words, 'surviving husband or wife,' it intended to designate the survivor of the spouses, and to give to such survivor the right to administer, or to name some person to administer." (*Estate of Dow, supra,* 132 Cal. at p. 310.)

factual situation, the court stated: "It is clear at the outset that when the decedent died *neither of the parties here concerned could have successfully applied for letters of administration upon [decedent's] estate, for until the death of the father [the first parent to die], both mother and father would have been preferred to them under the statute* had they applied for said letters. This right continued in the mother until her death. So until February 13, 1931 [death of the mother], neither [the public administrator nor sister] had a preferential right to letters of administration. *We reason, therefore, that in order to prevail appellant [the public administrator] must concede that the status of the parties at the time letters are granted must control.*" (*Id.*, at p. 531, italics added.) The conclusion of the *Herriott* court was proper because the situation involved a public administrator and sister desiring letters *after the death of parents accorded statutory preference* to the sister; nonetheless, its reasoning is inapplicable to the present case, where the contestant is a parent who is still alive. The second case relied upon by the probate court—*In re Allen* (1889) 78 Cal. 581 [21 P. 426]—is inapposite, since it is based on an antequated principle of law no longer in vogue. As later noted by the court in *Dow*, "[*In re Allen*]...*was made under the statute* prior to the amendment of 1891, *which provided that a married woman must not be appointed administratrix.* It was held that as she was expressly prohibited by the statute from being appointed administratrix, she did not have the right to give to one a greater right than she had herself." (*Estate of Dow, supra,* 132 Cal. at p. 311, italics added.) The *Dow* court then explained that later statutory amendments allowed married women to be appointed as administratrices, and that "such marriage does not deprive the party so marrying from the right to hold property, administer upon an estate, or to do any other lawful act." (*Ibid.*) Since *Allen* was based upon anachronistic legal principles, its reasoning was shown to be inapplicable to modern probate mandates in *Dow.* Therefore, it was erroneous for the court below to find that remarriage vitiated appellant's status as a "surviving spouse" within the meaning of section 422, subdivision (a)(1).

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.